UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

**ANGEL Y. COIRA COLON,**

Plaintiff,

vs.

**CITY OF BUFFALO, POLICE OFFICER CRISTIAN CIRINO, and POLICE OFFICER JUAN GARCIA,**

Defendants.

# NOTICE OF REMOVAL

TO THE CLERK OF THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § § 1441 and 1446, the City Defendants, above-named, by their undersigned attorney, hereby remove to this Court the civil action filed in New York State Supreme Court, Erie County, bearing Index Number 817380/2026. In support of this notice, the City Defendants state:

1. Plaintiff filed a Summons and Complaint against the City Defendants in state court on August 18, 2026. The City Defendants were served with the pleading on or about August 31, 2026.

2. An index identifying each document filed or served in the state court action is attached at page 3 of this Notice of Removal. Copies of these documents are also attached to this notice as exhibits.

3. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the Plaintiff's Complaint asserts claims against the Defendants arising under 42 U.S.C. § 1983.

4. Venue is proper pursuant to 28 U.S.C. § 1441(a) as this Court is the federal district court for the district embracing the place where the state court action is pending.

5. The City Defendants file this Notice of Removal so that the action now pending in state court is removed to this Court for all further proceedings.

Dated: 9/24/26
Bufalo, New York

ROSA ALINA PIZZI
Corporation Counsel
Attorney for Defendants

______________________________
Kurt Snuszka, Esq.
Assistant Corporation Counsel
City of Buffalo Department of Law
65 Niagara Square, 1100 City Hall
Buffalo, New York 14202
Tel.: (716) 581-4082

## INDEX OF DOCUMENTS FILED OR SERVED IN STATE COURT PRIOR TO REMOVAL

Ex. 1: Summons

Ex. 2: Complaint

Ex. 3: Affidavit/Affirmation of Service – City of Buffalo

Ex. 4: Affidavit/Affirmation of Service – Police Officer Juan Garcia

Ex. 5: Affidavit/Affirmation of Service – Police Officer Christian Cirino

**CERTIFICATE OF FILING AND SERVICE**

Promptly after filing this Notice of Removal in this Court, I will file the same on the New York State Courts Electronic Filing System, which will give notice to Plaintiffs and state court of the removal.

Dated: 9/24/26
Bufalo, New York

ROSA ALINA PIZZI
Corporation Counsel
Attorney for Defendants

Kurt Snuszka, Esq.
Assistant Corporation Counsel
City of Buffalo Department of Law
65 Niagara Square, 1100 City Hall
Buffalo, New York 14202
Tel.: (716) 581-4082

# EXHIBIT 1

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ERIE

---

ANGEL Y. COIRA COLON
127 Hawley Street
Buffalo, New York 14202

Plaintiff,

vs.

CITY OF BUFFALO
1100 City Hall
Buffalo, New York 14202

POLICE OFFICER CRISTIAN CIRINO
68 Court Street
Buffalo, New York 14202

POLICE OFFICER JUAN GARCIA
68 Court Street
Buffalo, New York 14202

Defendants.

---

**SUMMONS**

Index No.

Plaintiff designates Erie County as place of trial

The basis of venue is plaintiff's residence in Buffalo, York

**TO THE ABOVE-NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this Summons, to serve a notice of appearance, on the Plaintiff's Attorneys within TWENTY (20) DAYS after the service of this Summons, exclusive of the day of service (or within THIRTY (30) DAYS after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

DATED: Buffalo, New York
August 18, 2026

**LIPSITZ GREEN SCIME CAMBRIA LLP**

By: */s/ Robert M. Corp*
ROBERT M. CORP, ESQ.
Attorneys for Plaintiff
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3924
(716) 849-1333

# EXHIBIT 2

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ERIE

---

ANGEL Y. COIRA COLON,

Plaintiff,

vs.

CITY OF BUFFALO,
POLICE OFFICER CRISTIAN CIRINO,
POLICE OFFICER JUAN GARCIA,

Defendants.

---

**COMPLAINT**

Index No.

**JURY TRIAL DEMANDED**

Plaintiff, ANGEL Y. COIRA COLON ("Plaintiff"), by his attorneys, LIPSITZ GREEN SCIME CAMBRIA LLP, for his complaint against Defendants, alleges:

## PARTIES

1. Plaintiff, at all relevant times, was and still is a resident of the City of Buffalo, County of Erie and State of New York.

2. Defendant CITY OF BUFFALO (the "City") is a municipal corporation organized under the laws of the State of New York and situated in Erie County. The Buffalo Police Department ("BPD") is an administrative arm of the City and is not named as a separate defendant.

3. Upon information and belief, at all relevant times, Defendant POLICE OFFICER CRISTIAN CIRINO ("Cirino") was a police officer employed by the City and assigned to BPD.

4. Upon information and belief, at all relevant times, Defendant POLICE OFFICER JUAN GARCIA ("Garcia") was a police officer employed by the City and assigned to BPD.

5. At all relevant times, Cirino acted under color of state law and within the scope of his City employment. He is sued in his individual capacity.

6. At all relevant times, Garcia acted under color of state law and within the scope of his City employment. He is sued in his individual capacity.

7. Cirino and Garcia are referred to collectively as the "Officer Defendants."

## JURISDICTION AND VENUE

8. This action seeks relief under 42 U.S.C. § 1983 and New York law. This Court has jurisdiction over all claims, and venue is proper in Erie County under CPLR § 504(2) because the City is situated here and the events at issue occurred here.

## CONDITION PRECEDENT

9. On or about August 20, 2025, Plaintiff, identified in the Notice of Claim as Angel Y. Coira, timely served a Notice of Claim upon the CITY OF BUFFALO, BUFFALO POLICE DEPARTMENT, and the then-unidentified BPD officer and/or employee involved in the May 25, 2025 incident. Plaintiff appeared for an examination pursuant to General Municipal Law § 50-h on October 16, 2025, where he was sworn and examined under his full name, Angel Y. Coira Colon. More than thirty days have elapsed since service, the claims have not been adjusted or paid, and Plaintiff has satisfied all conditions precedent applicable to his state-law claims.

10. The Notice of Claim identified the date and location of the collision, alleged that a BPD officer rammed Plaintiff's ATV with a police vehicle, and identified injuries to Plaintiff's back and right leg. The City thereafter examined Plaintiff under oath, investigated the same incident, and identified Cirino and Garcia as the involved officers.

## FACTS

### A. The Unauthorized Pursuit and Collision

11. On May 25, 2025, during the early afternoon, Plaintiff was seated on a red Yamaha Banshee ATV with several friends in the parking area at Waterfront/Emerson Young Park, 43 Carolina Street, in the City of Buffalo.

12. Cirino and Garcia were assigned together to a dirt-bike and ATV detail. Cirino drove BPD marked unit 280, a 2022 Ford Explorer, and Garcia occupied the front passenger seat.

13. Plaintiff observed several BPD vehicles approach the group without emergency lights or sirens. The riders dispersed, and Plaintiff traveled from the park toward the parking lot of Waterfront Elementary School near Fourth and Carolina Streets.

14. BPD records identify the reason for the initial contact as alleged "reckless operation." Neither the pursuit report nor the involved officers' written accounts identifies a weapon, a threat of violence, or an attempt by Plaintiff to direct the ATV toward any person.

15. BPD's pursuit policy authorized a vehicle pursuit only when officers had probable cause to believe that the pursued vehicle contained a suspect wanted for a qualifying Class A, B, C, or D violent felony. BPD later charged Cirino with violating that policy after finding that the required predicate was absent.

16. Cirino pursued Plaintiff in his police vehicle, with Garcia beside him in the front passenger seat, and followed the ATV into the school parking area.

17. Cirino pursued without activating his vehicle's siren or overhead lights and without requesting a controlling supervisor.

18. Neither Cirino nor Garcia activated a body-worn camera during the pursuit or collision, and neither assigned camera recorded the events leading to impact.

19. When the Officer Defendants closed upon the ATV in the school parking area, Plaintiff was traveling through an open parking lot. No officer, pedestrian, or occupied vehicle stood in his path, and the circumstances presented no immediate threat of death or serious physical injury to anyone.

20. Plaintiff experienced no mechanical difficulty or loss of power, and the ATV did not stall or slow before the collision.

21. Cirino, with Garcia seated beside him, followed the ATV at close range and intentionally drove the police vehicle's front-driver area into the ATV's rear-right tire area to stop Plaintiff.

22. After the initial contact, the driver side of unit 280 drove up onto and over the ATV's right side.

23. BPD's Accident Investigation Unit reported that unit 280 was traveling behind the ATV, followed it at close range, struck the ATV at the rear-right tire area, and drove up onto and over its right side.

24. Both vehicles sustained significant damage. Unit 280 sustained damage to its front-driver bumper and crash-bar area, driver-side tire and rim, driver-side doors, rear-passenger quarter panel, rear bumper, rear-passenger tire, and undercarriage. BPD's fleet inspection estimated the damage at approximately $5,000 to $8,000.

25. The ATV sustained damage to its rear-right lamp area, right front and rear fenders, footrest, exhaust, suspension, handlebars, and other components. A large piece of bodywork was torn free from the ATV.

26. After the collision, unit 280 was positioned against the ATV before a BPD officer entered the police vehicle and moved it away, changing the vehicles' positions before the later scene photographs were taken.

27. The police vehicle struck Plaintiff's back and right leg, and the collision threw him from the ATV onto the pavement.

28. Plaintiff lost consciousness. When he regained awareness, he was on the ground, injured, and already handcuffed.

29. AMR personnel treated Plaintiff at the scene.

**B. The Officer Accounts and BPD Findings**

30. Cirino's written account stated that the ATV stalled and suddenly slowed down, that he tried to steer away, and that the ATV's rear tire contacted the patrol vehicle's guard rail and front-driver tire. He also stated that Plaintiff jumped from the ATV and tried to run.

31. Garcia submitted a materially similar account. He stated that the ATV began to stall and slow down, described the patrol-vehicle damage as "minimum damage," and stated that Plaintiff jumped from the ATV and tried to run.

32. BPD's Accident Investigation Unit described unit 280 as the striking vehicle. It placed the Explorer behind the ATV, found that its front-driver area struck the rear-right tire area, and reported that the Explorer then drove up onto and over the ATV's right side.

33. The Accident Investigation Unit described significant damage to both vehicles, and BPD's fleet inspection estimated $5,000 to $8,000 in damage to unit 280. Those findings conflict with Garcia's description of "minimum damage."

34. The materials produced by BPD identify no mechanical inspection or defect finding that supports the asserted stall, and the Accident Investigation Unit made no finding that the ATV stalled.

35. The ATV was operating normally and did not stall or slow impact.

36. Internal Affairs opened the case based in part on its conclusion that the city-involved accident had gone unreported for approximately two and one-half hours.

37. Garcia first activated his body-worn camera after the collision. Cirino likewise failed to record the pursuit and impact with his assigned camera.

38. BPD opened an Internal Affairs case and identified Cirino and Garcia as target officers.

39. BPD formally charged Cirino with violating Department rules by pursuing the ATV where there was no probable cause to believe that it contained a Class A, B, C, or D violent-felony suspect. The charge states that the pursuit resulted in a city-involved accident and damage to unit 280.

40. BPD also charged Cirino with failing to properly care for and use assigned City property and with failing to activate his body-worn camera during the pursuit.

41. BPD charged Garcia with failing to activate his body-worn camera while he was the passenger in a marked patrol vehicle during the pursuit and with conduct prejudicial to the good order, discipline, or reputation of the Department.

42. BPD sustained a Pursuit Policy Violation involving physical injury and a body-worn-camera violation against Cirino. It sustained a body-worn-camera violation against Garcia.

43. Cirino and Garcia each later pleaded guilty to one departmental charge. The Police Commissioner imposed a reprimand upon each officer in full satisfaction of all charges.

44. Although the investigation concerned a police-vehicle collision that caused physical injury, BPD's Internal Affairs task list marked initial contact with Plaintiff, a witness and evidence canvass, and collection of Plaintiff's medical records as not applicable.

45. The produced final dispositions identify no separate charge or discipline for the delayed accident report or for the disputed descriptions of the stall, direction of contact, and alleged attempt to run.

**C. Prior Notice to the City**

46. The City, through BPD, establishes and enforces the policies, training, supervision, investigation, and discipline governing vehicle pursuits and dirt-bike and ATV enforcement details.

47. Before May 25, 2025, the City had received notice of recurring problems involving the use of patrol vehicles against civilians and motorcycle riders, incomplete reporting and investigation of those incidents, officer accounts shifting responsibility to the injured civilian, and corrective action that did not prevent recurrence.

48. In *Kistner v. City of Buffalo*, No. 1:18-cv-00402 (W.D.N.Y.), litigation arising from a January 1, 2017 incident, a moving BPD patrol vehicle came into contact with a civilian and caused him to fall. The evidence developed in that action showed that the incident was not handled through the required immediate reporting and investigative procedures.

49. The injured civilian served a Notice of Claim in March 2017, yet BPD did not begin an Internal Affairs investigation until more than two and one-half years later, after a television report. BPD imposed no discipline upon the five on-scene officers despite acknowledged policy violations and did not adequately investigate the absence of repair documentation for the officers' claimed vehicle damage.

50. In November 2022, the federal court held that this series of investigative and disciplinary failures was sufficient to support an inference that the Police Commissioner ratified the officers' actions and that the City was deliberately indifferent in supervising and disciplining BPD officers or had an informal policy of not disciplining its officers.

51. A June 19, 2021 incident involving BPD Officer Richard Hy gave the City more specific notice concerning the use of a patrol vehicle against a motorcyclist during a traffic stop.

Hy reversed his patrol vehicle into a stopped motorcycle, knocking the rider and motorcycle to the ground.

52. Hy's written account stated that the motorcyclist moved forward and collided with the patrol vehicle. BPD Internal Affairs determined that the motorcycle was stopped when Hy struck it, and BPD resolved the matter through Hy's forfeiture of vacation days.

53. On September 5, 2024, the New York State Attorney General sent the BPD Commissioner written findings concerning Hy. The Attorney General concluded that Hy used excessive force when he used his patrol vehicle to strike the motorcyclist and that more significant discipline had been warranted.

54. The Attorney General found a pattern of misconduct and recommended that BPD monitor Hy, impose progressive discipline for future misconduct, and provide additional training. BPD received those findings more than eight months before Cirino struck Plaintiff.

55. *Kistner* and the subject Hy matter placed the City on notice of recurring risks involving police-vehicle contact with exposed civilians or riders, failures to follow accident-reporting and investigative procedures, accounts shifting responsibility to the civilian, and insufficient corrective action.

56. Garcia's personnel history separately reflected a sustained city-involved accident in 2021 that resulted in a conference and an EVOC referral without formal discipline. The same history reflects conferences following later matters involving force reporting and body-camera policy, without suspension.

57. The City failed to implement and enforce training, supervision, reporting requirements, after-action review, and progressive discipline adequate to address those known risks in motorcycle, dirt-bike, and ATV enforcement.

58. Despite assigning Cirino and Garcia to a specialized ATV detail, the City failed to ensure compliance with basic safeguards. Cirino initiated a pursuit outside the limits of BPD policy, neither officer activated a body-worn camera, no controlling supervisor was requested, and unit 280 followed the ATV at an unsafe close range.

59. The City's handling of prior vehicle-impact, reporting, and body-camera incidents failed to provide meaningful corrective action and permitted the same risks to persist.

60. The response here reflected those same deficiencies: no body-worn camera recorded the pursuit or collision, the accident was reported late, Internal Affairs marked initial contact with Plaintiff and a witness and evidence canvass as not applicable, and all departmental charges were resolved through reprimands.

**D. Plaintiff's Injuries and Damages**

61. As a direct result of the collision, Plaintiff sustained injuries to his right knee, leg, shin, back, and other parts of his body, together with loss of consciousness, abrasions, pain, and limitation.

62. Plaintiff sought hospital treatment after the incident for complaints involving his right knee and back. He later underwent diagnostic imaging and orthopedic care, wore a brace that kept his leg straight, and used crutches for numerous months.

63. Plaintiff incurred medical expenses and sustained pain and suffering, loss of enjoyment of life, impairment of earning capacity, and other economic and noneconomic damages.

64. This action falls within one or more of the exceptions set forth in CPLR § 1602.

**FIRST CAUSE OF ACTION**

42 U.S.C. § 1983 - EXCESSIVE FORCE AND UNREASONABLE SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT

(Against Cirino)

65. Plaintiff repeats, reiterates, and realleges each preceding allegation with the same force and effect as if fully set forth herein.

66. Cirino, acting under color of state law, intentionally seized Plaintiff by deliberately using unit 280 to stop his movement.

67. Cirino used unit 280 (a 2022 Ford Explorer) as the instrument by which he stopped Plaintiff. He set that instrument in motion for the purpose of stopping Plaintiff, and Plaintiff was stopped by the very instrumentality Cirino set in motion to achieve that result.

68. Cirino's conduct objectively manifested an intent to restrain Plaintiff. The following facts, viewed objectively and without regard to Cirino's subjective account, establish that intent:

a. Cirino pursued Plaintiff's ATV from the park into the school parking area;

b. unit 280 traveled behind the ATV and followed it at close range;

c. the front-driver area of unit 280 struck the right-rear tire area of the ATV;

d. unit 280 did not stop upon impact but continued forward, climbing onto and over the right side of the ATV;

e. the Buffalo Police Department's own Accident Investigation Unit identified unit 280 as the striking vehicle;

f. the signficant damage sustained by unit 280, including damage to its front-driver bumper and crash-bar area, tire and rim, driver-side doors, rear-passenger quarter

panel, rear bumper, rear-passenger tire, and undercarriage, with repairs estimated at $5,000 to $8,000, reflects a forceful impact rather than incidental contact; and

g. the ATV sustained significant damage, including torn bodywork.

69. Cirino did not brake, slow, steer away, or take any other action to avoid contact with the ATV before impact. The collision occurred while unit 280 was following the ATV from behind at close range.

70. Cirino's written account is contradicted by the physical evidence, by the findings of the Department's own Accident Investigation Unit, and because Plaintiff's ATV was operating normally and did not stall or slow before impact.

71. In the alternative, and even if the initial contact between unit 280 and the ATV were found to be unintended, Cirino thereafter intentionally continued to drive unit 280 forward, onto and over the ATV on which Plaintiff was seated. That continued forward operation was a deliberate application of physical force to Plaintiff's body and to the vehicle he was riding, and independently effected a seizure of Plaintiff.

72. The seizure was completed. Plaintiff's movement was in fact terminated; he was thrown from the ATV to the pavement, lost consciousness, and regained awareness on the ground already handcuffed and in police custody.

73. Unit 280 struck Plaintiff's ATV from behind and drove up onto and over its right side during the pursuit. Plaintiff did not lose control, strike another object, or crash before the contact.

74. The force Cirino used was capable of causing death or serious physical injury. An ATV affords its rider no enclosure, restraint, cage, or other protection, and Plaintiff was wearing no helmet or protective equipment.

75. Driving a full-size patrol SUV into an unenclosed ATV occupied by a rider, and then continuing forward onto and over that ATV, constituted force highly likely to have deadly effects.

76. Cirino had no probable cause to believe that Plaintiff posed a significant threat of death or serious physical injury to Cirino, to any other officer, or to any other person.

77. The force bore no reasonable relationship to the circumstances confronting Cirino. Plaintiff was suspected of ATV-related and traffic offenses only. He was not armed. No officer, pedestrian, or occupied vehicle was in his path.

78. Safer and less drastic means of stopping Plaintiff were available to Cirino, including a conventional show of authority with emergency lights and siren, requesting supervisory direction, coordinating with other units assigned to the same detail, or simply disengaging from a pursuit that departmental policy did not authorize.

79. Any authority Cirino possessed to stop or detain Plaintiff required the use of reasonable means. It did not extend to striking and overrunning Plaintiff's ATV with a patrol SUV.

80. Cirino's initiation of a pursuit outside the limits of departmental policy, his close following distance, his failure to give any warning, his failure to request supervisory control, his failure to activate his body-worn camera, and his inaccurate post-incident account each further demonstrate the unreasonableness of the force he used.

81. The Buffalo Police Department charged Cirino with pursuing the ATV where there was no probable cause to believe the vehicle contained a Class A, Class B, Class C, or Class D violent-felony suspect, and sustained that charge as a Pursuit Policy Violation involving physical injury.

82. By the conduct described herein, Cirino deprived Plaintiff of his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable seizure and from the use of excessive force.

83. By May 2025, a reasonable police officer would have understood that he could not intentionally drive a patrol SUV into an exposed ATV rider suspected of traffic offenses and posing no immediate threat of serious physical harm to anyone.

84. As a direct and proximate result of Cirino's conduct, Plaintiff sustained the injuries and damages alleged herein.

85. Cirino acted maliciously, intentionally, wantonly, and with reckless or callous disregard for Plaintiff's federally protected rights. Plaintiff is entitled to punitive damages against Cirino individually.

86. Plaintiff was required to retain attorneys to represent him in this matter and is entitled to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**SECOND CAUSE OF ACTION**

42 U.S.C. § 1983 - FAILURE TO INTERVENE

IN EXCESSIVE FORCE

(Against Garcia)

87. Plaintiff repeats, reiterates, and realleges each preceding allegation with the same force and effect as if fully set forth herein.

88. Garcia sat beside Cirino in the front passenger seat throughout the approach, pursuit, and collision. From that position, he observed unit 280 follow the ATV at a dangerously close range.

89. The pursuit began at the parking area of Waterfront/Emerson Young Park, 43 Carolina Street, and continued to the nearby parking lot of Waterfront Elementary School, 95

Fourth Street. Throughout that period, Garcia rode beside Cirino in the front passenger seat and was positioned to observe the ATV and the distance between the two vehicles.

90. As an officer assigned to the dirt-bike and ATV detail, Garcia knew or should have known the limits of BPD's pursuit policy and that the reported conduct involved reckless operation and ATV-related offenses rather than a qualifying violent felony.

91. Upon information and belief, Garcia had a realistic opportunity before impact to direct Cirino to disengage, increase the following distance, or avoid contact with the ATV.

92. Garcia knew or had reason to know that Cirino was using or was about to use objectively unreasonable force against Plaintiff.

93. During the approach and pursuit, Garcia had a realistic opportunity to direct Cirino to disengage or create a safe following distance. Garcia failed to take a reasonable step to prevent or terminate the unconstitutional force.

94. To the extent Garcia encouraged, approved, assisted, or directly participated in the decision to continue the pursuit and use unit 280 to stop Plaintiff, his direct participation and failure to intervene are pleaded in the alternative.

95. Garcia's failure to intervene violated Plaintiff's clearly established rights under the Fourth Amendment and 42 U.S.C. § 1983.

96. Garcia acted intentionally, wantonly, and with reckless or callous disregard for Plaintiff's federally protected rights. Plaintiff is entitled to punitive damages against Garcia and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

97. As a direct and proximate result of Garcia's conduct, Plaintiff sustained all of the injuries and damages alleged herein, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

42 U.S.C. § 1983 - MUNICIPAL LIABILITY

(Against the City)

98. Plaintiff repeats, reiterates, and realleges each preceding allegation with the same force and effect as if fully set forth herein.

99. The constitutional violations alleged herein were caused by the City's customs, practices, and deliberate failures concerning vehicle pursuits, the use of patrol vehicles as force, body-worn-camera activation, accident reporting, investigation, supervision, training, and discipline.

100. The *Kistner* litigation, the Hy incident and Attorney General findings, and BPD's own internal histories placed the City on actual and constructive notice of recurring problems involving vehicle stops, motorcycle and ATV riders, police-vehicle collisions, force reporting, and body-worn-camera obligations.

101. Those prior matters involved police-vehicle contact with exposed civilians or riders, accounts shifting responsibility for the resulting contact, failures to follow reporting and investigative procedures, and corrective action that did not prevent recurrence.

102. Despite that notice, the City failed to provide and enforce adequate training and supervision concerning the initiation and termination of pursuits, safe following distance, the use of a patrol vehicle as force, intervention by a passenger officer, and the danger posed to motorcycle, dirt-bike, and ATV riders.

103. The City also failed to enforce reliable requirements for timely body-camera activation, immediate reporting of police-vehicle collisions, independent review of objective collision evidence, truthful officer accounts, and progressive discipline.

104. The need for adequate training and supervision was obvious because ATV and dirt-bike enforcement regularly requires officers to decide whether and how to pursue an exposed rider who does not stop.

105. The City's repeated failure to impose meaningful corrective action conveyed that police-vehicle contact with exposed civilians, missing body-camera footage, delayed reporting, and minimized accounts would carry little consequence.

106. The City's customs, practices, and deliberate failures were the moving force behind Cirino's unreasonable use of force and Garcia's failure to intervene and directly and proximately caused Plaintiff's injuries and damages.

107. As a direct and proximate result, Plaintiff sustained all of the injuries and damages alleged herein and is entitled to compensatory damages and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**FOURTH CAUSE OF ACTION**

BATTERY UNDER NEW YORK LAW

(Against Cirino and the City)

108. Plaintiff repeats, reiterates, and realleges each preceding allegation with the same force and effect as if fully set forth herein.

109. Cirino intentionally made harmful and offensive contact with Plaintiff by driving unit 280 into the ATV, striking Plaintiff's back and right leg, and driving the police vehicle up onto and over the ATV before Plaintiff was thrown to the ground.

110. The harmful and offensive contact was made without Plaintiff's consent and without legal justification.

111. As a direct and proximate result, Plaintiff sustained all of the injuries and damages alleged herein, in an amount to be determined at trial.

112. Cirino acted maliciously, deliberately, and with conscious disregard for Plaintiff's rights. Plaintiff seeks punitive damages against Cirino individually in an amount sufficient to punish and deter such conduct.

113. Cirino acted within the scope of his City employment and in furtherance of City business. The City is therefore vicariously liable for his battery under the doctrine of respondeat superior.

**FIFTH CAUSE OF ACTION**

NEGLIGENCE AND RECKLESS OPERATION OF A MOTOR VEHICLE

PLEADED IN THE ALTERNATIVE

(Against Cirino and the City)

114. Plaintiff repeats, reiterates, and realleges each preceding allegation with the same force and effect as if fully set forth herein.

115. In the alternative to the intentional-force claims, Plaintiff alleges that his injuries resulted from Cirino's negligent and reckless operation of unit 280.

116. At all relevant times, Cirino owed Plaintiff a duty to operate unit 280 with reasonable care and a duty to refrain from operating it in reckless disregard for the safety of others.

117. The injury-producing conduct consisted of driving the front-driver area of unit 280 into the rear-right tire area of Plaintiff's ATV and driving the police vehicle up onto and over the ATV while Plaintiff occupied it.

118. To the extent any injury-producing conduct was associated with a privilege enumerated in Vehicle and Traffic Law § 1104(b), Cirino acted in reckless disregard for Plaintiff's safety within the meaning of Vehicle and Traffic Law § 1104(e).

119. To the extent any injury-producing conduct was not associated with a privilege enumerated in Vehicle and Traffic Law § 1104(b), that conduct is governed by ordinary negligence, and Cirino failed to exercise reasonable care.

120. Cirino breached his duties by initiating and continuing an unauthorized pursuit for nonviolent conduct; following an exposed ATV rider at close range; failing to maintain a safe following distance and proper control of unit 280; failing to avoid the collision; driving onto and over the ATV; and failing to request supervisory control.

121. As a direct and proximate result of Cirino's negligence, Plaintiff sustained the injuries and damages alleged herein.

122. Cirino intentionally performed an act of an unreasonable character in disregard of a known and obvious risk so great as to make it highly probable that serious harm would follow, and he did so with conscious indifference to the outcome.

123. The known risk was substantial because a full-size patrol SUV followed at close range behind an exposed ATV rider and then drove onto and over the ATV.

124. The risk Cirino created was disproportionate to any legitimate law-enforcement objective. The reported conduct involved reckless operation and ATV-related offenses, and Plaintiff posed no immediate threat of death or serious physical injury to any officer or member of the public.

125. BPD formally charged Cirino with pursuing the ATV outside the limits of Department policy and later sustained a Pursuit Policy Violation involving physical injury.

126. As a direct and proximate result of Cirino's reckless disregard for the safety of others, Plaintiff sustained the injuries and damages alleged herein.

127. At all relevant times, Cirino was acting within the scope of his employment by the City and in furtherance of City business.

128. The City is vicariously liable under the doctrine of respondeat superior for Cirino's negligent and reckless operation of unit 280.

**WHEREFORE**, Plaintiff asks this Court to GRANT the following relief:

compensatory damages in an amount exceeding the jurisdictional limits of all lower courts that would otherwise have jurisdiction; punitive damages against the Officer Defendants; reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; costs, disbursements, and pre-judgment and post-judgment interest to the extent permitted by law; and such other and further relief as the Court deems just and proper.

DATED: Buffalo, New York
August 18, 2026

LIPSITZ GREEN SCIME CAMBRIA LLP
By: */s/ Robert M. Corp*
ROBERT M. CORP, ESQ.
Attorneys for Plaintiff
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3924
(716) 849-1333

# EXHIBIT 3

# AFFIDAVIT/AFFIRMATION OF SERVICE

**State of New York**
**Court: SUPREME** **County of ERIE** **Index No.817380/2026**

---

**ANGEL Y. COIRA-COLON** Plaintiff(s)/Petitioner(s)

vs
**CITY OF BUFFALO**
et al Defendant(s)Respondent(s)

The undersigned being duly sworn, deposes and says: that deponent is not a party to this action, is over 18 years of age and resides in the State of New York. I affirm the following to be true under the penalties of perjury pursuant to N.Y. C.P.L.R 2106:

That on **AUGUST 31ST,2026**, at **11:27AM**:,at **1100 CITY HALL BFLO NY**

deponent served the within **SUMMONS/COMPLAINT AND E-FILE NOTICE** on which were set forth the Index No. herein, and the date of filing.

**ON CITY OF BUFFALO**

☐ **Individual** By delivering a true copy thereof to said recipient personally: deponent knew the person so served to be the individual described therein.

☐ **Responsible Person** By delivering to and leaving with _____, a true copy thereof, a person of suitable age and discretion. Said premised being the defendant/respondent's _____ dwelling place_____ place of business_____ last known address within State.

☐ **Mail** A copy thereof was deposited in a postpaid, properly addressed envelope, marked "Personal & Confidential", in a depository maintained by the U.S.P.S and mailed to the above address on _____ 2026.

☑ **Corporation** by delivering to and leaving with **LINDA FABIAN**, said individual to be **AUTHORIZED INDIVIDUAL**.

☐ **LLC/LLP** who specifically stated he/she was authorized to accept service on behalf of the Corporation/Government Agency/Entity.

☐ **Affixing To Door** By affixing a true copy thereof to the door, being the defendant/respondent's_____dwelling place _____place of business _____last known address within the State.

☐ **Previous Attempts** Deponent previously attempted to serve the above named defendant/respondent on;

at _____on _____, _____M.

at _____on _____, _____M.

at _____on _____, _____M.

at _____on _____, _____M.

**Description** 63years of age 115lbs. 5ft 2in. _____ male X female GRAY hair WHITEskin.

_____other.

☑ **Military Service** To the best knowledge, information and belief the said defendant at the time of service was not engaged in military service of the United States.

I affirm this 1st day of Sept ,2026 under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Notary Not Required Pursuant to N.Y. CPLR 2106
**John R. MacCarrick**

# EXHIBIT 4

# AFFIDAVIT/AFFIRMATION OF SERVICE

**State of New York**
**Court: SUPREME** **County of ERIE** **Index No.817380/2026**

**ANGEL Y. COIRA-COLON** Plaintiff(s)/Petitioner(s)

vs
**CITY OF BUFFALO**
et al Defendant(s)Respondent(s)

The undersigned being duly sworn, deposes and says: that deponent is not a party to this action, is over 18 years of age and resides in the State of New York. I affirm the following to be true under the penalties of perjury pursuant to N.Y. C.P.L.R 2106:

That on **AUGUST 31ST,2026**, at **11:47AM**:,at **68 COURT ST BFLO NY**

deponent served the within **SUMMONS/COMPLAINT AND E-FILE NOTICE**
on which were set forth the Index No. herein, and the date of filing.

**ON POLICE OFFICER JUAN GARCIA**

☐ **Individual** By delivering a true copy thereof to said recipient personally: deponent knew the person so served to be the individual described therein.

☑ **Responsible Person** By delivering to and leaving with **KEERON JOHNSON/AUTH. IND**, a true copy thereof, a person of suitable age and discretion. Said premised being the defendant/respondent's _____ dwelling place_X_ place of business_____ last known address within State.

☑ **Mail** A copy thereof was deposited in a postpaid, properly addressed envelope, marked "Personal & Confidential", in a depository maintained by the U.S.P.S and mailed to the above address on **SEPTEMBER 1ST, 2026**.

☐ **Corporation** by delivering to and leaving with _____, said individual to be _____.

☐ **LLC/LLP** who specifically stated he/she was authorized to accept service on behalf of the Corporation/Government Agency/Entity.

☐ **Affixing To Door** By affixing a true copy thereof to the door, being the defendant/respondent's_____dwelling place _____place of business _____last known address within the State.

☐ **Previous Attempts** Deponent previously attempted to serve the above named defendant/respondent on;

at _____on _____, _____M.

at _____on _____, _____M.

at _____on _____, _____M.

at _____on _____, _____M.

**Description** 25years of age 140lbs. 5ft 4in. _____ male X female BLACK hair BLACKskin.

_____other.

☑ **Military Service** To the best knowledge, information and belief the said defendant at the time of service was not engaged in military service of the United States.

I affirm this 1st day of Sept. ,2026 under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Notary Not Required Pursuant to N.Y. CPLR 2106
**John R. MacCarrick**

# EXHIBIT 5

# AFFIDAVIT/AFFIRMATION OF SERVICE

**State of New York**
**Court: SUPREME** **County of ERIE** **Index No.817380/2026**

**ANGEL Y. COIRA-COLON** Plaintiff(s)/Petitioner(s)

vs

**CITY OF BUFFALO**
et al Defendant(s)Respondent(s)

The undersigned being duly sworn, deposes and says: that deponent is not a party to this action, is over 18 years of age and resides in the State of New York. I affirm the following to be true under the penalties of perjury pursuant to N.Y. C.P.L.R 2106:

That on **AUGUST 31ST**,**2026**, at **11:47AM**:,at **68 COURT ST BFLO NY**

deponent served the within **SUMMONS/COMPLAINT AND E-FILE NOTICE** on which were set forth the Index No. herein, and the date of filing.

**ON POLICE OFFICER CRISTIAN CIRINO**

☐ **Individual** By delivering a true copy thereof to said recipient personally: deponent knew the person so served to be the individual described therein.

☑ **Responsible Person** By delivering to and leaving with **KEERON JOHNSON/AUTH. IND**, a true copy thereof, a person of suitable age and discretion. Said premised being the defendant/respondent's _____ dwelling place _✓_ place of business_____ last known address within State.

☑ **Mail** A copy thereof was deposited in a postpaid, properly addressed envelope, marked "Personal & Confidential", in a depository maintained by the U.S.P.S and mailed to the above address on **SEPTEMBER 1ST, 2026**.

☐ **Corporation** by delivering to and leaving with _____, said individual to be _____.

☐ **LLC/LLP** who specifically stated he/she was authorized to accept service on behalf of the Corporation/Government Agency/Entity.

☐ **Affixing To Door** By affixing a true copy thereof to the door, being the defendant/respondent's_____dwelling place _____place of business _____last known address within the State.

☐ **Previous Attempts** Deponent previously attempted to serve the above named defendant/respondent on;

at _____on _____, _____M.

at _____on _____, _____M.

at _____on _____, _____M.

at _____on _____, _____M.

**Description** 25years of age 140lbs. 5ft 4in. _____ male X female BLACK hair BLACKskin.

_____other.

☑ **Military Service** To the best knowledge, information and belief the said defendant at the time of service was not engaged in military service of the United States.

I affirm this 1st day of Sept. ,2026 under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Notary Not Required Pursuant to N.Y. CPLR 2106
**John R. MacCarrick**